**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **MARK HUCKABY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:10-CV-299(MTT)** |
| ) | |
| **TRAVELERS PROPERTY CASUALTY** ) | |
| **COMPANY OF AMERICA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## ORDER

This matter is before the Court on Defendant Travelers Property Insurance
Company's Motion to Reconsider (Doc. 33) the Court's Order (Doc. 30) on Travelers'
Motion for Summary Judgment (Doc. 17).   For the following reasons, Travelers' Motion
to Reconsider is GRANTED, the Court's original Order on the Motion for Summary
Judgment is VACATED, and Travelers' Motion for Summary Judgment is GRANTED in
part and DENIED in part.

### I.  Procedural History

This action involves a homeowner's insurance policy issued by Travelers.  The
Plaintiff seeks coverage under the Policy for damages resulting from a July 15, 2009 fire
at a house located at 479 Huckaby Road, Thomaston, Georgia.  Travelers denied the
Plaintiff's claim because "[the] Plaintiff was not using the Property as his residence
premises at the time of the fire…as required for coverage to exist under the Policy."
(Doc. 17-2 at 2).  Following Travelers' denial of coverage, the Plaintiff filed this suit.

Travelers moved for summary judgment on four issues: (1) that the Huckaby Road house was not the Plaintiff's "residence premises" as a matter of law; (2) that the Plaintiff did not incur any additional living expenses following the fire at the Huckaby Road house as a matter of law; (3) that Georgia's Valued Policy Statute does not apply to the Plaintiff's loss as a matter of law; and (4) that because Travelers had a good faith reason to deny the Plaintiff's claim, the Plaintiff could not recover bad faith penalties and attorney's fees as a matter of law.

On October 18, 2011, the Court granted in part and denied in part Travelers' Motion for Summary Judgment.  (Doc. 30).  Pertinent to Travelers' Motion for Reconsideration, the Court determined the definition of residence premises could not be read to require the insured to live at the location at the time of the loss.  The Court rested its reasoning on the Georgia Court of Appeals' decision in *Hill v. Nationwide Mutual Fire Insurance Co.*, 214 Ga. App. 715, 448 S.E.2d 747 (1994), and the Policy's poorly drafted definition of residence premises.  Travelers argues in its motion for reconsideration that the Georgia Court of Appeals' decision in *Epps v. Nicholson*, 197 Ga. App. 246, 370 S.E.2d 13 (1988) requires a contrary result.

## II.  Motion for Summary Judgment

### A.    Factual Background

Travelers' Policy provides coverage for "the dwelling on the residence premises shown in the Declaration used principally as a private residence…."  (Doc. 27-1 at 10).  The "residence premises" is further defined as "mean[ing] the one or two family dwelling, other structures, and grounds *or* that part of any other building where you

reside and which is shown as the 'residence premises' in the declaration." (Doc. 27-1 at 10) (emphasis added).  No provision in the Policy requires the residence premises be the insured's only residence; instead, it only requires that the location be used principally as a private residence.  (Doc. 27-1).  The Policy does not contain generally applicable provisions requiring the residence premises to be occupied at the time of loss or a vacancy exclusion disallowing coverage if the residence premises is vacant.[1]

The Plaintiff bought the Huckaby Road house from his parents in or around 1992. (Plaintiff Dep. 64:1-11).  It is undisputed that he lived in the house until he married Maria in November 2005.  After marrying, the Plaintiff continued to live in his house while remodeling Maria's house, which is located at 444 Twinwood Street in Thomaston. According to the Plaintiff, he and Maria agreed that they would live in the Huckaby Road house and sell her house because the Twinwood house had a larger mortgage.

At the end of 2007 or the beginning of 2008, the Plaintiff, his wife, and his children moved from the Huckaby Road house to the Twinwood house.  The Twinwood house was located one street away from the Huckaby Road house.  In his Examination under Oath,[2] conducted by Travelers prior to its denial of the Plaintiff's claim, the Plaintiff stated that he had been living in both the Twinwood Street house and the

---

[1] The Policy contains vacancy restrictions and occupancy requirements that apply to specific types of coverage, e.g., "Glass or Safety Glazing Material" coverage and frozen pipe coverage. (Doc. 27-1 at 14; Doc. 21-1 at 15, 16).  Thus, while leaving the residence premises vacant or unoccupied impacts coverage for certain types of loss, so long as the insured location is the residence premises, there is no specific occupancy requirement or vacancy restriction for basic fire loss coverage.

[2] As Travelers points out the Plaintiff's deposition testimony is more favorable than his initial examination under oath testimony.  While the deposition and examination under oath are not as conflicting as Travelers asserts, the Court primarily takes the Plaintiff's version of the facts from his less favorable examination under oath.

Huckaby Road house on and off for the past three years and would go "back and forth" between the two locations. (Pl. Examination under Oath of Plaintiff at 9). He states that "[his] wife owned a house and [he] owned a house." (Pl. Examination under Oath at 82). The Plaintiff's father also testified that the couple debated which house to sell, but eventually decided to keep Huckaby Road house. However, they stayed at the Twinwood house during the remodeling of the Huckaby Road house. (Frank Huckaby Dep. at 13).

In May 2008, the Plaintiff's wife was hospitalized, and around July 2008, the Plaintiff's friend, Jeff Robinson, moved into the Huckaby Road house. The Plaintiff alleges Robinson was one of his closest friends and that he let Robinson stay temporarily at the Huckaby Road house as a favor. The Plaintiff's father testified that Robinson was in and out staying with the Plaintiff all of his life. (Frank Huckaby Dep. at 9). The Plaintiff stated, "when [Robinson] come back and started helping me finish remodeling. I mean that's -- when we moved our stuff from the Huckaby Road residence over to my wife's residence to do the remodeling and stuff, I cut the water off because there was no need of no water service when I was re-gutting the showers and the toilets and redoing the bathroom floors…and [I] also cut the electricity off because I was not going to pay – I could not afford electricity in both houses…. I would work at one house and work on Huckaby Road and then when it come down to the time that I had a job, I would put it off." (Pl. Examination under Oath at 86-87). The Plaintiff planned on "gutting" the two bathrooms, replacing floors, and doing other "demolition[s] and [] repairs to the Huckaby Road Residence." (Pl. Examination under Oath at 60). The Plaintiff also asserts that he "had to shut the water off to redo the bathrooms. [He]

redid both of the bathrooms at the 479 Huckaby Road.  [He] put ceramic tiles throughout the entire house….tore apart the floor several times doing different projects in the home because [his] wife wanted it the way she wanted it before she committed to selling her home."  (Pl. Examination under Oath at 35).

Although the Plaintiff and his father allege no rent was ever paid by Robinson, Maria Huckaby, the Plaintiff's wife, alleges that the Plaintiff was angry at Robinson because he was supposed to be paying rent, but was not.  She did not think that Robinson had ever actually paid any rent.  (Maria Huckaby Dep. at 24).  However, the Plaintiff admits that when Robinson's parents wanted Robinson to live with him, he told them they would have to turn on the electricity and water, because he had discontinued service while doing construction on the house.  (Pl. Examination under Oath at 44-45).  There is evidence that Robinson's parents' names were listed on the utility bills during the time period that Robinson was living with Huckaby.

The night before the fire, the Plaintiff and Robinson argued over Robinson's failure to pay rent.  During the fight, the Plaintiff told Robinson to "get off my property. I'm living here."  (Pl. Examination under Oath at 63).

Further, the Plaintiff stated that, at least at times during the period after he and his wife moved to the Twinwood house, he stayed at the Huckaby Road house while Robinson was living there.  (Pl. Examination under Oath at 52-54).  The Plaintiff's father also testified that while his son was remodeling the Huckaby Road house and while Robinson was living there, the Plaintiff would spend the night at Huckaby Road.  The Plaintiff testified that he and his children stayed at the 479 Huckaby Road house several times with Robinson was there in 2008 and 2009.  (Pl. Examination under Oath at 84-

-5-

85).  He said that his children would sleep in their bedrooms, he would sleep in his bedroom and Robinson would sleep on the couch.  The children had bedroom sets at both the Huckaby Road house and the Twinwood house, but that at some point he moved them out of the Huckaby Road house and gave them to his niece while he was doing renovations.  (Pl. Examination under Oath at 86-87).  Further, according to the Plaintiff, at the time of the fire there was a "couch, coffee table, TV stand, [and] stuff such as that" at Huckaby Road house.  (Pl. Examination under Oath at 64).  He also stated he had clothes both at the Huckaby Road house and the Twinwood house.  (Pl. Examination under Oath at 80).

However, the Plaintiff did testify that he never "moved" back into the Huckaby Road house after his wife got sick, but that he was always working on the house, had a generator over there when the utilities were off, and stayed there at times.  Further, it seems to be undisputed that Maria never moved back into the Huckaby Road house after she became ill in 2008 and required home healthcare.  (Maria Huckaby Dep. at 34, 35).

Travelers points to several exhibits to support its contention that the Plaintiff was not living at the Huckaby Road house: (1) the fact that his address in a 2007 custody agreement was identified as 444 Twinwood Street, (2) the fact that the Twinwood Street address is found in his 2007, 2008, and 2009 tax returns, and (3) that in his 2007 the Plaintiff Income Tax return the Plaintiff identified $5,400 as "rents received" for the Huckaby Road residence.[3]  (Doc. 17-1 at 8).  The Plaintiff responds that his wife always

---

[3] As noted, it is disputed whether Robinson was actually paying rent or whether the Plaintiff merely wanted him to pay rent.  However, even if Robinson was paying rent, the Policy does allow for coverage of the residence premises if a portion of the premises is rented, so long as

did his tax returns using her Turbo Tax account that she had been using for years.  (Pl. Examination under Oath at 35).  Thus, according to the Plaintiff and his wife, all the tax returns had her address regardless of where they were living at the time the tax returns were filed.  Further, a 2009 Miscellaneous Income 1099 shows the Plaintiff's address as 479 Huckaby Road.  (Doc. 26-11 at 11).

Other exhibits list the Plaintiff's address as the Twinwood address.  For example, Northside Fire and Rescue, the local fire department, listed the Plaintiff as the owner of the Huckaby Road house, but stated his address as the Twinwood address and identified Robinson's name as an occupant of the Huckaby Road house.  (Doc. 17-20 at 3).  The address on the Huckabys' joint bank account is the Twinwood address, but the Plaintiff argues he was added to her account after they were married to obtain a bank card.

Other documentation lists the Huckaby Road address as his address.  For example, the Plaintiff's driving license has 479 Huckaby Road as his address.  (Plaintiff Dep. at 109).  Documents from West Central Georgia Bank have the Plaintiff and his wife's address as 479 Huckaby Road (Doc. 26-1 at 2), and mail from United Bank addressed, most recently at the end of 2007, to Mark Huckaby at 479 Huckaby Road (Doc. 26-4 at 37).  Moreover, a pharmacy bill dated June 26, 2009 was mailed to the Huckaby Road address (Doc. 26-4 at 43) and a 2008 mortgage statement was sent to the Huckaby Road address (Doc. 26-5 at 8).   Even some of Travelers' internal records

---

the insured is still residing in the residence premises.  Thus, the question is whether there is an issue of fact as to whether the Plaintiff was residing at the Huckaby Road house and not necessarily whether he was renting a portion of the house to Robinson.

document the Plaintiff's assertion, before his Examination under Oath, that he lived at both locations.   (Doc. 17-16 at 41).

### B.      Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  Further, the burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info Sys. & Networks Corp.*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

### C.      Discussion

#### 1.      Residence Premises

Travelers contends that the Policy required the Plaintiff to live at the Huckaby Road house at the time, apparently at the precise time, of the fire in order for the property to be his "residence premises."  Thus, according to Travelers, the Plaintiff did not live at the Huckaby Road house and his claim is not covered by the Policy. Travelers also argues that the Plaintiff was renting the residence to Robinson. Therefore, Travelers asserts, the Huckaby Road house cannot be covered under the Policy's residence premises definition.  The Plaintiff contends no Policy provision can be read to require that he must continuously reside at the Huckaby Road house for it to be

his residence premises.  (Doc. 27 at 2).  The Plaintiff argues that he spent the night several times at the Huckaby Road house while Robinson lived there prior to the fire and after he moved to the Twinwood house.  Thus, even though he did not sleep at the Huckaby Road house every night, the Plaintiff argues he never abandoned the Huckaby Road house as his residence.  On the contrary, the Plaintiff argues, he had the clear intention to maintain the house as his residence and that he was remodeling the residence premises in order to move back to the Huckaby Road house permanently.  Moreover, the Plaintiff claims that "the [P]olicy does not prevent the [P]laintiff from using as his residence both the subject property and the house owned by his wife."  (Doc. 27 at 3).

"'In construing an insurance policy, [t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean….  Where a provision in the policy is susceptible to two or more constructions, the court[] will adopt that construction which is most favorable to the insured.'"  *Hill v. Nationwide Mutual Fire Insurance Co.*, 214 Ga. App. 715, 715, 448 S.E.2d 747, 747-48 (1994) (quoting *Atlantic Wood Indus. v. Lumberman's Underwriting Alliance*, 196 Ga. App. 503, 505, 396 S.E.2d 541, 543 (1990) (internal citation omitted)).  Additionally, an insurance contract should be examined as a whole when the court is attempting to construe any portion within the contract.  *Edwards v. Atlantic Insurance Co.*, 203 Ga. App. 608, 609, 417 S.E.2d 410, 412 (1992).  An interpretation of a contract that will uphold a contract in whole and in every part is preferred, and the whole contract should be looked to in arriving at the construction of any provision.  *Alea London Ltd. v. American Home Servs., Inc.*, 2011 WL 1437003, at *3 (11th Cir. 2011). However, if, by

the language of the contract, no coverage exists, "we will not…extend coverage where none was contracted or intended." *Jefferson Insurance Co. of New York v. Dunn*, 269 Ga. App. 213, 496 S.E.2d 696, 699 (1998).  Thus, "[p]olicies of insurance will be liberally construed in favor of the object to [be] accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon print forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice." *Davis v. United American Life Insurance Co.*, 215 Ga. 521, 527, 11 S.E.2d 488, 492 (1959) (internal quotations omitted).

Unlike many standard insurance policies and terms, "residence premises" is, for some unknown reason, worded differently in various homeowner's insurance policies, and the precise meaning of the term has been a frequent subject of litigation in Georgia courts. *See Grange Mutual Casualty Co. v. DeMoonie*, 227 Ga. App. 812, 490 S.E.2d 451 (1997) (holding that residence premises definition required living at the residence in order for the insurance policy to cover the loss; thus, the location was not covered because the insured had moved from the home permanently, had rented the insured location, attempted to sell the insured location, and was about to re-rent the location at the time of the fire); *But see Hill v. Nationwide Mutual Fire Insurance Co.*, 214 Ga. App. 715, 448 S.E.2d 747 (1994) (holding that the residence premises definition's use of the disjunctive "or" and a semi-colon required the court to interpret the clause to allow coverage when the insured was not living at the insured location at the time of the loss). Further, some homeowner's insurance policies have "exclusive" residence clauses.  For example, in *Georgia Farm Bureau Mutual Insurance Co. v. Kephart*, 211 Ga. App. 423, 439 S.E.2d 682 (1993), the court interpreted the insurance policy, which required that

the residence premises be the insured's *exclusive* residence, to preclude coverage when the plaintiff did not reside at the house that was named on the policy's declaration page.  *Id.* at 424-25, 439 S.E.2d at 683-84 (emphasis added) (the policy required "the residence premises [must be] the only premises where the named insured or spouse maintains a residence other than business or farm properties"  *Id.* at 424, 439 S.E.2d at 682).

In *Epps v. Nicholson*, 187 Ga. App. 246, 370 S.E.2d 13 (1988), the Georgia Court of Appeals interpreted a residence premises definition identical to the one found in Travelers' Policy.  With little elaboration and based on facts markedly different than the facts here, the court interpreted the residence premises language to require that the dwelling be the place where the insured resides.  *Id.* at 247, 370 S.E.2d at 14.  Thus, the court held that the residence premises clause precluded recovery by the plaintiff for a house that was, and always had been, a rental unit. *Id.*

In the Court's view, if Georgia's rules of construction governing the interpretation of insurance contracts mean anything, they should lead to the conclusion that the definition of residence premises in this Policy should be interpreted in the same manner the Georgia Court of Appeals did in *Hill v. Nationwide Mutual Fire Insurance Company*, 214 Ga. App. 615, 448 S.E.2d 747 (1994).  The court in *Hill* held that the residence premises definition's use of the disjunctive "or," without any intervening punctuation, breaks the connection between two clauses.  *See Hill v. Nationwide Mutual Fire Insurance Co.*, 214 Ga. App. 715, 448 S.E.2d 747.  Applying this rule, the residence premises provision here, and in *Epps*, would refer to "the one or two family dwelling, other structures, and grounds," on the one hand, or, on the other, "the part of any other

building where you reside."  Thus, the insured would not be required to reside in the residence premises so long as it was a family dwelling and named on the Declarations page.  This conclusion, previously reached by the Court in its original Order, is buttressed by the use of "and" preceded by a comma between "structure and grounds."  In other words, to reach the conclusion argued by Travelers, the clause would, at a minimum, have to read "the one or two family dwelling, other structures and grounds, or that part of any other building where you reside…."

Further, *Epps* is not a Georgia Supreme Court decision, and, thus, the Court is not required to follow *Epps* blindly.  For example, if the Court concludes that the Georgia Supreme Court would reach a different result than the one reached by the Georgia Court of Appeals in *Epps*, the Court should not follow the lower court's interpretation of the Policy's language.  *Bravo v. United States*, 577 F.3d 1324, 1326 (11th Cir. 2009).  The Court notes that the Court of Appeals later opinion in *Hill* could arguably cast doubt on the *Epps* decision, particularly given the manner in which the court in *Hill* distinguishes *Epps*. [4]

Nevertheless, the Georgia Court of Appeals in *Epps* interpreted a residence premises definition identical to the one found in the Plaintiff's Policy.  Although, the Court questions the continuing viability of *Epps*, it feels compelled to follow *Epps*.  Thus, the Court, following the interpretation by the Georgia Court of Appeals in *Epps,*

---

[4] The court in *Hill* stated "the conjunctive 'and' does not, however, appear in the instant clause. To the contrary, the instant clause includes a disjunctive "or," which is not present in the *Epps* clause at all."  *Hill*, 214 Ga. App. at 715, 448 S.E.2d at 749.  The *Epps* definition, like the definition in this Policy, does in fact contain a disjunctive "or."  *Epps*, 187 Ga. App. at 246, 370 S.E.2d at 14 ("the policy defines 'residence premises' as 'the one or two family dwelling, other structure, and grounds or that part of any other building where you reside…'").

reluctantly holds that the definition of residence premises in the Policy requires that the Plaintiff reside at the Huckaby Road house in order for the location to be covered by the Policy's residence premises definition.[5]

However, and unlike the policy in *Kephart*, the Policy here contains no provision requiring the residence premises to be the Plaintiff's exclusive dwelling.  In fact, Travelers admits that *Kephart* "is not controlling because the policy in *Kephart* required the residence to be the named insured's <u>only</u> residence."  (Doc. 29 at 4, footnote 1) (emphasis in original).  The Plaintiff's Policy has a provision that states it covers "the dwelling on the residence premises shown in the Declaration used principally as *a* private residence," but nowhere does the Policy require the Huckaby Road house to be the Plaintiff's only residence.  (Doc. 27-1 at 10).

---

[5] The Plaintiff or his parents had their homeowner's policy with Travelers for over 20 years and perhaps the age of the Policy explains the awkward wording of the residence premises clause. Cases from other jurisdictions construing similar provisions in perhaps newer policies demonstrate that insurers can draft the clause to make their intention clear:

> "8. 'residence premises' means:
>     a.  that one family dwelling, other structures and grounds; or
>     b.  that part of any other building;
> where you reside and which is shown as the 'residence premises' in the Declaration." *See Heniser v. Frankenmuth Mutual Insurance Co.*, 534 N.W.2d 502, 510, n. 2 (Mich. 1995).

Based on review of many cases construing residence premises provisions, it seems clear that insurers generally intend that their homeowner's policies only cover residences where the insured resides, as opposed to, for example, rental houses.  However, as the Georgia Court of Appeals reasoned in *Hill*, that intention, however clear it may be to insurers, does not relieve insurers of the obligation to make their intentions clear to their insureds. *Hill*, 214 Ga. App. at 715, 448 S.E.2d at 747-48.  While no one has suggested that the Plaintiff here checked his Policy before moving temporarily to the Twinwood house to see if his policy would continue to cover the Huckaby Road house, an insured who did so could reasonably conclude that Travelers' policy did not bar the insured from living elsewhere, so long as he did not abandon the insured premises as his residence.

Further, when interpreting insurance policies, a "question[] of…residence [is a] mixed question[] of law and fact and [is] ordinarily one for a jury to determine." *Daniel v. Allstate Insurance Co.*, 290 Ga. App. 898, 902, 660 S.E.2d 765, 769 (2008) (internal citations and quotations omitted). Georgia courts have also held a person can have several residences for purposes of insurance coverage. *Baldwin v. State Farm Fire & Casualty Co.*, 264 Ga. App. 229, 230, 590 S.E.2d 206, 207 (2003). Here, while there is evidence that the Plaintiff was living at the Twinwood house, there is also evidence that he stayed at the Huckaby Road house. Because the Policy does not require the Huckaby Road house to be the Plaintiff's only residence, the Plaintiff can have more than one residence for the purposes of the Policy's coverage. To what extent the Plaintiff used the Huckaby Road house as a residence, and whether his use is sufficient to be classified as his residence premises under the Policy, are disputed questions of fact best left to the jury.

Essentially, Travelers argues that the Court should take into account the Plaintiff's credibility regarding his deposition testimony. Of course, the Court cannot make credibility determinations. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

Here, there is evidence that the Plaintiff's initial examination under oath and his subsequent deposition are not as conflicting as Travelers asserts, and the depositions of Maria Huckaby and Frank Huckaby support portions of the Plaintiff's examination

-14-

under oath and deposition.  Although there is documentation tending to show the Plaintiff was living at the Twinwood house, there are also documents showing that the Plaintiff continued to reside at the Huckaby Road house.

Therefore, based on the Court's review of the record in light most favorable to the Plaintiff, genuine issues of material fact exist as to whether the Plaintiff was residing in the Huckaby Road house and, thus, whether the Huckaby Road house was his residence premises for coverage under the Policy.  Accordingly, summary judgment with regard to the residence premises issue is DENIED.

### 2.    The Plaintiff's Claim for Additional Living Expenses

The Plaintiff's complaint also contains a claim for loss of living expenses in the amount of $20,000.  (Plaintiff Comp.  ¶ 9).  Travelers alleges that the Plaintiff did not suffer any increase of his normal living expenses as a result of the fire at the Huckaby Road house.  (Doc. 17-1 at 10-11).  The pertinent portion of the Policy provides, under the "Loss of Use" provision, that "[i]f a loss under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.  Payment shall be for the shortest time required to repair or replace the premises or, if you permanently relocate, the shortest time required for your household to settle elsewhere."  (Doc. 27-1 at 12).

Travelers alleges that the undisputed evidence in this case shows that the Plaintiff did not suffer any increase in his normal living expenses, because the Plaintiff admits he was not continuously living at the Huckaby Road house prior to the fire. According to the Plaintiff, he moved into a camper behind his father's house after the

fire in order to do work on the Twinwood house, and, after a few days, he and his family moved back to the Twinwood house.  (Plaintiff Dep. 21-22).  Moreover, in his deposition, the Plaintiff clearly states that he did not incur any additional living expenses after the fire at the Huckaby Road house.  (Plaintiff Dep. 57:13-18).

The Plaintiff did not respond to this argument by Travelers.  The Court finds that there is no factual dispute as to whether the Plaintiff incurred additional living expenses. There is no evidence, besides the allegation in his complaint, to support the contention that the Plaintiff incurred any additional living expenses following the fire.  Accordingly, Travelers is entitled to summary judgment on the Plaintiff's claim for $20,000 in additional living expenses.

### 3.    Georgia's Valued Policy Law's Applicability

In his complaint, the Plaintiff seeks to recover the entire $107,000, which is the Policy limit, for the fire loss on the Huckaby Road house.  (Plaintiff Comp.  ¶ 9).  The Plaintiff contends that the Huckaby Road house was "completely demolished."  (Plaintiff Dep.  42:9-10).  Further, he states that "two-thirds of the house has the walls standing. On the backside on the master bedroom…all those walls are gone.  You can see straight through the house."  (Plaintiff Dep. 42-43).  Thus, the Plaintiff's claims Georgia's Valued Policy Statute, O.C.G.A. § 33-32-5, applies to him.

Georgia's Valued Policy Statute provides: "Whenever any policy of insurance is issued to a natural person or persons insuring a specifically described one or two family residential building or structure located in this state against loss by fire and the building or structure is wholly destroyed by fire without fraudulent or criminal fault on the part of the insured or one acting in his behalf, the amount of insurance set forth in the policy

relative to the building or structure shall be taken conclusively to be the value of the property…." O.C.G.A. § 33-32-5(a).  It is clear that the statute protects property owners from the burden of proving the value of the property after it has been "wholly destroyed" by fire, thus entitling a property owner to recover the policy limit.  *See id.*  However, this provision does not apply if the "building or structure is not wholly destroyed by fire." O.C.G.A. § 33-32-5(b)(1).

Travelers admits that Georgia courts have not stated a specific test to determine when a dwelling has been wholly destroyed.  However, Travelers cites a University of Arkansas law review article, an insurance treatise, and an 1898 Wisconsin state case to support its contention that "there cannot be a total loss so long as a remnant of the structure standing is reasonably adaptable for use as a basis upon which to restore the building to its former condition."  (Doc. 17-1 at 13).  The Court does not find these sources persuasive or controlling and, instead, looks to two Georgia Court of Appeals cases interpreting Georgia's Valued Policy Statute for guidance.[6]

First, in *Georgia Farm Bureau Mutual Insurance Co. v. Brown*, 192 Ga. App. 504, 385 S.E.2d 87 (1986), the court reviewed a trial court's denial of an insurer's motion for judgment notwithstanding a jury's verdict allowing a plaintiff to recover the policy limits when a fire "destroyed" his house.  *Id.* at 504, 385 S.E.2d at 87-88.  The court stated that the "[p]laintiff's evidence showing that it would cost more to repair the house than to replace it and photographs submitted into evidence [by the defendant] showing that the house was substantially gutted by the fire was sufficient to authorize the jury's finding

---

[6] The Plaintiff fails to cite any sources in its Response, but merely states "it is a jury question as to whether the dwelling was wholly destroyed by fire."  (Doc. 27 at 4).

that the house was 'wholly destroyed by fire' as contemplated in [O.C.G.A. § 33-32-5]."
*Id.* at 507, 385 S.E.2d at 90.  Further, in *Allstate Insurance Co. v. Baugh*, 173 Ga. App.
615, 327 S.E.2d 576 (1985), the insurer alleged that the trial court erred in charging the
jury on O.C.G.A. § 33-32-5 and the statute's effects on recovery, on the ground that
such a charge was not authorized by the evidence.  *Id.* at 617, 327 S.E.2d at 579.  The
court held that because there was "at least *some* evidence of record that appellees'
home was totally destroyed, the trial court's charge based on [the statute] was proper."
*Id.*, 327 S.E.2d at 579 (emphasis added).

Although photocopied pictures provided by Travelers are not clear, some show
that the Huckaby Road house is substantially damaged.  Further, Northside Fire and
Rescue's Report following the fire at the Huckaby Road house states "due to the heat,
smoke, and water damage residence was basically totally destroyed."  (Doc. 17-20).

There is no Georgia case law supporting Travelers' contention that there can be
no total loss so long as a remnant of the structure is standing.  On the contrary, Georgia
courts hold that an issue of fact exists if there is some evidence that the home is wholly
destroyed, photographs or testimony that the home is substantially gutted, or evidence
showing it would cost more to repair the house than to replace it.  In short, an issue of
fact remains as to whether Georgia's Valued Policy Statute is applicable.  Accordingly,
on Travelers' claim that the statute is inapplicable as a matter of law, summary
judgment is DENIED.

### 4.    The Plaintiff's Claim for Bad Faith Penalties Pursuant to O.C.G.A.  § 33-4-6

In general, issues regarding bad faith penalties and attorney's fees pursuant to
O.C.G.A. § 33-4-6 are resolved by the jury.  *Forbus v. Allstate Insurance Co.*, 603

F.Supp.113, 116 (N.D. Ga. Dec. 21, 1984).  Moreover, only when there is indisputable, sound evidence regarding the reasons for the nonpayment, or if the issue of liability is close, should the court grant summary judgment on the issue of bad faith penalties and attorney's fees. *See International Indemnity Co. v. Collins*, 258 Ga. 236, 238, 367 S.E.2d 786, 788 (1988).  The insured bears the burden of proving the refusal to pay the claim was done in bad faith, and penalties for bad faith are not authorized where the insurance company has reasonable grounds to contest the claim and where there is a disputed question of fact.  *Moon v. Mercury Insurance Co. of Ga.*, 253 Ga. App. 506, 507, 559 S.E.2d 532, 534-35 (2002).  The existence of a factual dispute regarding whether a party is covered under an insurance policy will act as a defense to a plaintiff's bad faith claim for attorney's fees. *Id.* at 508-509, 559 S.E.2d at 535.

Here, Travelers has moved for summary judgment on the issue of bad faith contending that, as a matter of law, it had reasonable grounds to contest the fire loss claim on the Huckaby Road house.  Travelers bases its argument on its conclusion that the Huckaby Road house was not the Plaintiff's residence premises because he did not live at the location at the time of the fire loss, but rather was renting the house to Robinson.[7]  The Plaintiff arguably made conflicting representations regarding his residence at Huckaby Road during the course of Travelers' investigation of his claim. Further, this Court's decision that factual dispute exists as to whether the Plaintiff was residing at the Huckaby Road house for purpose of satisfying the Policy's residence

---

[7] It should be noted that the Plaintiff, as with the issue concerning his claim for additional living expenses, did not address this argument in his Response to Travelers' Motion.

premises definition bolsters Travelers' argument that it had reasonable grounds to deny coverage and contest the fire loss claim.

Accordingly, Travelers' claim that it is entitled to summary judgment on the Plaintiff's claim for bad faith attorney's fees pursuant to O.C.G.A. § 33-4-6 is DENIED.

### III. Conclusion

For the foregoing reasons, Travelers' Motion to Reconsider is GRANTED (Doc. 33), the Court's original Order (Doc. 30) on the Motion for Summary Judgment is VACATED, and Travelers' Motion for Summary Judgment (Doc. 17) is GRANTED in part and DENIED in part.

With regard to the Motion for Summary Judgment, first, as to Travelers' contention that it is entitled to summary judgment because the Huckaby Road house was not the Plaintiff's residence premises, the Motion is DENIED.  Second, with regard to Travelers' contention that it is entitled to summary judgment because the Plaintiff did not incur any additional living expenses following the fire at the Huckaby Road house, the Motion is GRANTED.  Third, as to Travelers' contention that it is entitled to summary judgment because Georgia's Valued Policy Statute does not apply to the Plaintiff's loss, the Motion is DENIED.  Last, on Travelers' claim that it is entitled to summary judgment because, as a matter of law, it had a good faith reason to deny the Plaintiff's claim, precluding the Plaintiff from recovering bad faith penalties and attorney's fees, the Motion is GRANTED.

**SO ORDERED**, this 16th day of December, 2011.


S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT